UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Nicholas L. L.,　　　　　　　　　　　　　　　File No. 19-cv-02543 (ECT/TNL)

　　　　　Petitioner,

v.

William P. Barr, Kevin McAleenan,　　　　　　**OPINION AND ORDER**
Matthew T. Albence, Peter Berg,
Department of Homeland Security,
Immigration and Customs Enforcement,
Michael Paul, Kenneth T. Cuccinelli,
U.S. Citizenship and Immigration Services,

　　　　　Respondents.

---

David L. Wilson and Brittany S. Bakken, Wilson Law Group LLC, Minneapolis, MN, for Petitioner Nicholas L. L.

Adam J. Hoskins, Ana H. Voss, and Ann M. Bildtsen, United States Attorney's Office for Respondents William P. Barr, Kevin McAleenan, Matthew T. Albence, Peter Berg, Department of Homeland Security, Immigration and Customs Enforcement, Michael Paul, Kenneth T. Cuccinelli, and U.S. Citizenship and Immigration Services.

---

　　　　　Nicholas L.L. claims to be a victim of human trafficking. He is in the custody of United States Immigration and Customs Enforcement ("ICE"). He has been ordered removed from the United States to Mexico, and his removal is imminent. Nicholas alleges that his removal would violate federal law because it would prevent him from continuing to pursue a visa for which he has applied that is available to victims of human trafficking (a "T visa"). By law, that type of visa is unavailable to persons who are not physically present in the United States or at a port of entry to the United States. Nicholas here seeks

a temporary restraining order preventing ICE from removing him from the United States until United States Citizenship and Immigration Services ("USCIS") makes a preliminary or "bona fide" determination regarding his pending application for a T visa. If made in Nicholas's favor, that determination would by law stay execution of the removal order. Because the Government received notice of the motion and had the opportunity to respond, the motion will be treated as one for a preliminary injunction. *See* Fed. R. Civ. P. 65. Nicholas's motion will be denied. Under a federal statute and controlling Eighth Circuit precedent interpreting that statute, the federal district courts have subject-matter jurisdiction to review only "purely legal questions" arising from the decision to execute an order of removal. Most of Nicholas's claims raise questions that are not purely legal. Though Nicholas seems to assert one purely legal question, he has not shown that he is likely to prevail on the merits of that claim, making the entry of a preliminary injunction inappropriate.

I

Nicholas is a native and citizen of Mexico who, as far as the record reflects, first entered the United States in August 2005. Bakken Decl., Ex. D [ECF No. 3-4]. In April 2011, an immigration judge issued an order of removal, and Nicholas was removed from the United States on April 27, 2011. *Id.*; *see also* O'Denius Decl., Ex. B [ECF No. 15-2]. Nicholas re-entered the United States on March 15, 2019. Bakken Decl., Ex. D. ICE detained him until March 26, when he was served with a notice of ICE's intent to reinstate the previous order of removal entered against him and released on an order of supervision. *Id.* On July 17, ICE notified Nicholas that his order of supervision had been revoked and

2

detained him. O'Denius Decl., Ex. E [ECF No. 15-5]. Nicholas has since remained in ICE custody.

On August 6, Nicholas applied for a T visa by filing an I-914 application for T-1 nonimmigrant status. Bakken Decl., Ex. B. [ECF No. 3-2]. As part of his application, Nicholas described how human traffickers forced his March 2019 entry into the United States. According to Nicholas, members of a drug cartel, believing he was wealthy, kidnapped him in Mexico City and brought him to a house near the United States border. *Id.* at 30. The kidnappers demanded ransom, but after Nicholas persuaded them that he did not have money to pay a ransom, the kidnappers forced him to traffic drugs into the United States. *Id.* at 31. On their return trip to Mexico, Nicholas injured his leg and became unable to walk, and the kidnapper-traffickers abandoned him. *Id.* The next day, Nicholas flagged down a passing driver and asked the driver to contact United States immigration authorities. *Id.* Immigration officers brought Nicholas to a hospital where doctors performed surgery on his leg; after surgery, he was placed in ICE custody. *Id.* at 31–32. At the time he applied for a T visa, Nicholas also filed an I-246 application with ICE for a stay of deportation or removal pending a bona fide determination by USCIS on his T-visa application. *Id.*, Ex. C [ECF No. 3-3].

On September 10, Nicholas appeared before an immigration judge for review of a reasonable-fear determination made by the Department of Homeland Security ("DHS"). *See* O'Denius Decl., Ex. F [ECF No. 15-6]. The immigration judge found that Nicholas had not "established a reasonable possibility that he[] would be persecuted on the basis of his[] race, religion, nationality, membership in a particular social group, or his[] political

opinion, or a reasonable possibility that he[] would be tortured in the country of removal." *Id.* The immigration judge returned Nicholas's case to DHS for execution of his removal order. *Id.*

On September 13, ICE denied Nicholas's request for a stay for removal. Bakken Decl., Ex. G [ECF No. 3-7]. Upon being notified of the denial four days later, Nicholas's attorney contacted USCIS to request an expedited bona fide determination on Nicholas's T-visa application. *Id.*, Ex. F [ECF No. 3-6]. USCIS has not yet made a bona fide determination regarding the T-visa application.

On September 17, Nicholas filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. §§ 2241 and 1651 and Article I, Section 9, Clause 2 of the United States Constitution ("the Suspension Clause"). Habeas Pet. ¶ 1 [ECF No. 1]. He also filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction, pursuant to Federal Rule of Civil Procedure 65, seeking to prevent ICE from removing him from the United States while his T-visa application and habeas petition are pending. Mot. for TRO & Prelim. Inj. [ECF No. 2]. On September 18, Nicholas was placed on a flight to execute his removal. He was removed from the flight prior to departure, and he remains in ICE custody pending resolution of this motion. Nicholas filed an amended petition for a writ of habeas corpus late on October 1, the night before the hearing on his motion. First Am. Pet. [ECF No. 16]. At that hearing, the Government volunteered that, while it maintains an interest in the expeditious resolution of this matter, Nicholas would not be removed until a decision is made on his motion.

II

A

Nicholas seeks a preliminary injunction preventing ICE from removing him from the United States until USCIS makes a "bona fide determination" regarding his T-visa application.[1] T-1 nonimmigrant status is a visa classification that provides non-citizen victims of severe trafficking with immigration relief. An alien is eligible for T-1 nonimmigrant status if the alien demonstrates that he or she "is or has been a victim of a severe form of trafficking in persons," "is physically present in the United States or at a port-of-entry thereto," "has complied with any reasonable request for assistance" in an investigation or prosecution of an act involving trafficking of persons, and "would suffer extreme hardship involving unusual and severe harm upon removal." 8 C.F.R. § 214.11(b); *see also id.*, § 214.11(f)–(i); 8 U.S.C. § 1101(a)(15)(T). An alien is rendered ineligible for a T visa "if there is substantial reason to believe that the alien has committed an act of a severe form of trafficking in persons." 8 C.F.R. § 214.11(b)(5).

An alien "subject to a final order of removal . . . may file an application for T-1 nonimmigrant status directly with USCIS." *Id.*, § 214.11(d)(1)(ii). USCIS has "sole

---

[1] Nicholas's motion also states that he is seeking injunctive relief to prevent his removal while his T-visa application is pending with USCIS and while his habeas petition is pending. Mot. for TRO & Prelim. Inj. ¶¶ 1–8 [ECF No. 2]. However, Nicholas's statement in his supporting memorandum that he "seeks a temporary restraining order barring Respondents from removing him from the United States until USCIS has issued a bona fide determination on his application for T nonimmigrant status" essentially encompasses all three requests. If USCIS were to determine that Nicholas's T-visa application is bona fide, he would be granted an automatic stay of removal while his application is adjudicated and the claims in his habeas petition would be moot.

5

jurisdiction over all applications for T nonimmigrant status." *Id.*, § 214.11(d). "The filing of an application for T nonimmigrant status has no effect on DHS authority or discretion to execute a final order of removal, although the alien may request an administrative stay of removal pursuant to 8 C.F.R. 241.6(a)." *Id.*, § 214.11(d)(1)(ii). "Neither an immigration judge nor the Board [of Immigration Appeals ("BIA")] has jurisdiction to adjudicate an application for a stay of removal, deportation, or exclusion on the basis of the filing of an application for T nonimmigrant status." *Id.*, § 214.11(e)(3).

After an alien submits an application for T-1 nonimmigrant status, USCIS "will conduct an initial review to determine if the application is a bona fide application for T-1 nonimmigrant status." *Id.*, § 214.11(e). An application will be determined to be bona fide if:

(i) The application is properly filed and is complete;

(ii) The application does not appear to be fraudulent;

(iii) The application presents prima facie evidence of each eligibility requirement for T-1 nonimmigrant status;

(iv) Biometrics and background checks are complete; and

(v) The applicant is (A) Admissible to the United States; or (B) Inadmissible to the United States based on a ground that may be waived . . . .

*Id.*, § 214.11(e)(1). If USCIS determines that a T-visa application is bona fide, it will automatically stay the execution of any final order of removal until a final decision is made on the application. *Id.*, § 214.11(d)(1)(ii), (e)(3).

6

B

As a general rule, federal district courts do not have subject-matter jurisdiction to adjudicate claims that directly or indirectly challenge a removal order. "[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5); *see also Akinmulero v. Holder*, 347 F. App'x 58, 60–61 (5th Cir. 2009). That judicial review will consider "all questions of law and fact, including interpretation and application of constitutional and statutory provisions" related to that order of removal. 8 U.S.C. § 1252(b)(9). Except as provided in § 1252, and

> notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of the Department of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g); *Silva v. United States*, 866 F.3d 938, 940 n.2 (8th Cir. 2017); *see also Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999) (stating § 1252(g) is "narrow" in that it "applies only to three discrete actions," not all actions that may be part of deportation process).

Determining whether a claim is an indirect challenge to a decision to execute a removal order or is independent of a challenge to a removal order "will turn on the substance of the relief that a plaintiff is seeking." *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (quoting *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011)).

7

"When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)." *Martinez*, 704 F.3d at 623; *see also Silva*, 866 F.3d at 940 ("A claim that is connected directly and immediately to a decision to execute a removal order arises from that decision." (quotation omitted)). Moreover, § 1252(g) "makes no distinction between discretionary and nondiscretionary decisions. So long as the claim arises from a decision to execute a removal order there is no jurisdiction." *Silva*, 866 F.3d at 940. Consequently, "any habeas corpus petition pending in the district court in which an alien challenges a final administrative order of removal . . . must be transferred . . . to the appropriate court of appeals." *Tostado v. Carlson*, 481 F.3d 1012, 1014 (8th Cir. 2007); *Haider v. Gonzales*, 438 F.3d 902, 910 (8th Cir. 2006) (concluding court of appeals was sole means for judicial review of petitioner's habeas petition because it did "nothing more than attack the IJ's removal order").

If that were all the law said, the outcome here would be straightforward: there would be no subject-matter jurisdiction because Nicholas's claims arise from the decision to execute a removal order. But for the removal order and its impending execution, Nicholas would have no need to seek habeas relief. An injunction preventing execution of the removal order is the only coercive relief Nicholas seeks. Numerous cases from this District involving like facts reach this result. For example, in *Abukar v. Whitaker*, No. 18-cv-3254 (DSD/KMM), 2018 WL 6191149 (D. Minn. Nov. 28, 2018), the habeas petitioner sought a stay of his imminent removal to Somalia until the BIA ruled on a separate motion to reopen his asylum case. *Id.* at *1. The petitioner claimed that his removal would subject

8

him to a risk of persecution and torture in Somalia and that removal before a BIA decision on his motion to reopen would violate due process. *Id.* Though the petitioner did not challenge the removal order directly, the court recognized that the requested relief—a stay of the removal order—was "directly related to the Attorney General's decision to execute a removal order." *Id.* at *2. Therefore, the court determined that § 1252(g) stripped it of subject-matter jurisdiction over the case. *Id.*; *see also Lara-Saavedra v. Sessions*, No. 18-cv-2989 (MJD/LIB), 2019 WL 572656, at *1–2 (D. Minn. Feb. 12, 2019); *Sheikh v. Sessions*, No. 17-cv-5330 (JNE/HB), 2017 WL 6033674, at *1–2 (D. Minn. Dec. 6, 2017); *Ibrahim v. Sessions*, No. 17-cv-5333 (DSD/TNL), 2017 WL 6021314, at *1–2 (D. Minn. Dec. 5, 2017); *Mohamed v. Sessions*, No. 17-cv-5331 (DSD/BRT), 2017 WL 6021293, at *1–2 (D. Minn. Dec. 5, 2017); *Adan v. Sessions*, No. 17-cv-5328 (MJD/BRT), 2017 WL 6001740, at *2–3 (D. Minn. Dec. 4, 2017); *Ruiz v. Johnson*, No. 14-cv-1721 (MJD/TNL), 2014 WL 2511094, at *3 (D. Minn. June 4, 2014); *Buezo v. Banieke*, No. 08-cv-206 (DWF/RLE), 2008 WL 312808, at *2 (D. Minn. Feb. 1, 2008). And many courts in other jurisdictions have reached the same conclusion. *See, e.g.*, *Barros Anguisaca v. Decker*, __ F. Supp. 3d __, No. 18 Civ. 7493 (PAE), 2019 WL 3244122, at *5 (S.D.N.Y. July 9, 2019) ("[A] request for a stay of removal constitutes a challenge to a removal order." (quoting *Vidhja v. Whitaker*, No. 19 Civ. 613 (PGG), 2019 WL 1090369, at *3 (S.D.N.Y. Mar. 6, 2019) and citing four additional cases)).

But that is not all the law says in the Eighth Circuit about a federal district court's subject-matter jurisdiction to entertain habeas claims challenging removal orders. In *Jama v. Immigration and Naturalization Service*, 329 F.3d 630 (8th Cir. 2003), *aff'd*, 543 U.S.

335 (2005), the Eighth Circuit carved out an exception to the jurisdiction-stripping provision in § 1252(g) for "purely legal question[s]." *Id.*, 329 F.3d at 632–33. Though there was a time when the vitality of this carve-out might have been questioned, *see Ali v. Sessions*, No. 17-cv-5334 (PJS/KMM), 2017 WL 6205789, at *4–5 (D. Minn. Dec. 7, 2017), the Eighth Circuit affirmed its validity in *Silva*. There, the Eighth Circuit determined that *Jama*'s purely-legal-question exception did not save federal jurisdiction over claims asserted under the Federal Tort Claims Act and the Constitution for damages arising from the plaintiff's allegedly wrongful removal to Mexico. *Silva*, 866 F.3d at 939, 941. In *Silva*, the court did not recognize that the *Jama* carve-out had been abrogated or narrowed by subsequent legal developments; the court applied the rule to the claims before it, finding that "[t]he alien's claims here arise from a decision to execute a removal order, and *Jama*'s rationale does not warrant excepting these claims from the limitation on the district court's jurisdiction." *Silva*, 866 F.3d at 941. *Silva*'s treatment of the *Jama* carve-out for purely legal questions requires that rule to be considered and applied here.

What is a "purely legal question"? This phrase cannot refer to the entire case. No federal case can be purely legal. Article III requires the plaintiff to "have suffered an injury in fact," "a causal connection between the injury and the conduct complained of," and it "must be likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotations omitted). A plaintiff must plead facts to satisfy these requirements. A "purely legal question," then, must refer to particular claims in the case, or perhaps specific issues within claims. Federal cases contain various descriptions of what it means for a claim or issue to be "purely legal." For example,

10

a "purely legal question" has been described as one not requiring a "judgment based upon facts and their significance." *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 181 (1948) (Frankfurter, J., dissenting). In *Ahrenholz v. Board of Trustees of the University of Illinois*, 219 F.3d 674 (7th Cir. 2000), then Chief Judge Posner described a "question of law" as "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine," and a "'pure' question of law" as "something the court of appeals could decide quickly and cleanly without having to study the record"—or "an abstract issue of law . . . suitable for determination by an appellate court without a trial record." *Id.* at 676–77. This is how the *Jama* carve-out seems to have been understood and applied in *Ali*, 2017 WL 6205789, at **5–6 (describing one of the petitioner's habeas claims and observing the claim presented a pure question of law because a decision on the merits of the claim required no decision "about whether conditions in Somalia have changed or whether Ali will be subject to torture in Somalia *or any other factual issue*") (emphasis added). Courts also have observed that the difference between a pure question of law and a mixed question of law and fact is not always obvious. *See Williams v. Taylor*, 529 U.S. 362, 384–85 (2000) ("Indeed, our pre-AEDPA efforts to distinguish questions of fact, questions of law, and 'mixed questions,' and to create an appropriate standard of habeas review for each, generated some not insubstantial difference of opinion as to which issues of law fell into which category of question, and as to which standard of review applied to each."); *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 171 n.4 (1984) ("An exception which requires a rigid determination of whether an issue is one of fact, law or mixed fact and law, as a practical matter, would often be impossible to apply because 'the

11

journey from a pure question of fact to a pure question of law is one of subtle gradations rather than one marked by a rigid divide.' Restatement (Second) of Judgments § 28 Comment *b* (1982)."). The possible subtlety in difference between questions of law and fact makes it especially important to analyze carefully whether a question really is "purely legal." After all, "[m]ost constitutional questions that arise in habeas corpus proceedings—and therefore most 'decisions' to be made—require the federal judge to apply a rule of law to a set of facts." *Williams*, 529 U.S. at 384.

Most of Nicholas's claims do not raise purely legal questions. For example, citing 8 C.F.R. § 215.3(h), Nicholas alleges that his removal would prejudice the United States because it would hinder "an investigation the government may continue or initiate against his traffickers." First Am. Pet. ¶¶ 87, 91. Whether an investigation is occurring, whether Nicholas might be needed in connection with any investigation, and whether his removal would prejudice the United States are fact questions. Nicholas alleges that he "meets all the requirements for a bona fide determination." *Id.* ¶ 13. But those requirements are fact-intensive. They include, among other criteria, a determination that "[t]he application does not appear to be fraudulent" and that it "presents prima facie evidence of each eligibility requirement for T-1 nonimmigrant status." 8 C.F.R. § 214.11(e)(1)(ii), (iii). Nicholas alleges "on information and belief" that USCIS "makes its bona fide determination at the time of adjudicating the underlying I-914 and I-192 applications." First Am. Pet. ¶ 61; *see also id.* ¶ 112. Whether USCIS actually acts as Nicholas alleges—especially when the allegation is made on information and belief—raises many fact questions: Does USCIS have a policy of acting as alleged? If not, has it ever acted as alleged? Does USCIS intend

12

to act as alleged in Nicholas's case? Nicholas's challenge to USCIS's alleged delay in making a bona fide determination in his case is plainly factual. As support for this assertion, Nicholas alleges:

> The burden of conducting a bona fide determination is minimal. USCIS has never received more than the allotted visa numbers in one fiscal year. There is no cause for the delay or unwillingness to issue a bona fide determination prior adjudication [sic] of the full I-914 application.

*Id.* ¶ 113. It is difficult to imagine a question concerning the "burden" associated with an activity, whether "cause" exists for delay, or the reasonableness of delay being anything but fact intensive. There is not subject-matter jurisdiction over these and similar claims.

Nicholas asserts one claim that does appear to raise a purely legal question. Throughout his First Amended Petition, Nicholas alleges that a bona fide determination would, if made in his favor, trigger an automatic stay of his removal and that his removal before that determination is made would render him ineligible to pursue a T visa in violation of the Constitution, the APA, and the INA. *See, e.g.*, *id.* ¶¶ 72, 88. Whether a T-visa applicant lawfully may be removed before a bona fide determination has been made seems to be a purely legal question. It is an abstract question and answering it does not require consideration of Nicholas's circumstances, apart from merely recognizing the fact (necessary for standing) that he is a T-visa applicant facing imminent removal. There is subject-matter jurisdiction over this claim.

C

Injunctive relief is an "extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). Our

13

Eighth Circuit's oft-cited *Dataphase* decision describes the list of considerations that the Court applies to decide whether to grant preliminary injunctive relief: "(1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest." *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 956 (D. Minn. 1999). The core question is whether the equities "so favor[] the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). "The burden of establishing the four factors lies with the party seeking injunctive relief." *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 807 (D. Minn. 2018). "The most important of the *Dataphase* factors is the [movant's] likelihood of success on the merits." *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998). The priority accorded the likelihood of success on the merits seems especially appropriate here in view of the "purely legal" character of the question being considered.

Nicholas has not shown that he is likely to succeed on the merits of his claim that a T-visa applicant cannot be removed before a bona fide determination has been made concerning his application. Federal regulations say the opposite:

> An alien subject to a final order of removal, deportation, or exclusion may file an application for T-1 nonimmigrant status directly with USCIS. *The filing of an application for T nonimmigrant status has no effect on DHS authority or discretion to execute a final order of removal*, although the alien may request an administrative stay of removal pursuant to 8 CFR 241.6(a). If the alien is in detention pending execution of the final order, the period of detention (under the standards of 8 CFR 241.4) reasonably necessary to bring about

14

> the applicant's removal will be extended during the period the stay is in effect. If USCIS subsequently determines under the procedures in paragraph (e) of this section that the application is bona fide, DHS will automatically grant an administrative stay of the final order of removal, deportation, or exclusion, and the stay will remain in effect until a final decision is made on the application for T nonimmigrant status.
>
> \* \* \*
>
> If USCIS determines that an application is bona fide it automatically stays the execution of any final order of removal, deportation, or exclusion. This administrative stay will remain in effect until any adverse decision becomes final. *The filing of an application for T nonimmigrant status does not automatically stay the execution of a final order unless USCIS has determined that the application is bona fide.*

8 C.F.R. § 214.11(d)(1)(ii), (e)(3) (emphasis added). Nicholas does not attack the validity of these regulations directly. He does not argue that the regulations are invalid because they are at odds with, or exceed authority given by, a statute. In his First Amended Petition, Nicholas seems to allege that a different regulation, 28 C.F.R. § 1100.27, "restrains [ICE's] authority to remove an individual who has filed a T visa application with USCIS, is in federal custody, and [for whom] USCIS has yet to complete the process of rendering a bona fide determination." First Am. Pet. ¶ 66–68, 107. This regulation and the related regulations that follow describe a variety of procedures, rights, and protections available to trafficking victims. Nicholas does not identify any conflict between these regulations and 8 C.F.R. § 214.11(d)(1)(ii) and (e)(3), and none is apparent.[2]

---

[2] In the section of his brief addressing the likelihood of success on the merits, Nicholas argues only that he is likely to prevail on the merits because he meets the requirements for a bona fide determination. Pet. Mem. at 6–8 [ECF No. 12]. But, as

15

Nicholas attacks the regulations indirectly by arguing that removal of a T-visa applicant before a bona fide determination has been made violates the Fifth Amendment's Due Process guarantee. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause[.]" *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). When a liberty or property interest implicates procedural due process, courts determine whether the existing procedural protections are constitutionally sufficient by balancing three factors: "(1) the nature and weight of the private interest affected by the challenged official action; (2) the risk of an erroneous deprivation of such interest as a result of the summary procedures used; and (3) the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought." *Booker v. City of Saint Paul*, 762 F.3d 730, 734 (8th Cir. 2014) (quotation omitted); *see also Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Nicholas asserts that he has a liberty interest, not simply in preventing his removal, but also "in his ability to remain eligible for T Nonimmigrant Status" and "in the adjudication of applications for relief." Am. Pet. ¶¶ 71, 73, 96–98. He argues that removal prior to a bona fide determination will deprive him of a "viable defense to removability" and that staying his removal will not burden the government. *Id.* ¶¶ 99–100. However, the

---

explained, whether Nicholas meets these requirements is not a purely legal question; there is not subject-matter jurisdiction over this aspect of Nicholas's claims.

Eighth Circuit has held that there is no constitutionally-protected liberty interest in discretionary immigration relief, and it is not clear that Nicholas's assertion that he has a due process right to seek relief is meaningfully different. *See Hanggi v. Holder*, 563 F.3d 378, 384 (8th Cir. 2009). Nicholas also does not explain why the existing procedures, including the ability to request a stay of removal from ICE prior to a bona fide determination, are inadequate to protect his asserted liberty interests nor does he identify alternate procedures other than automatically staying removal in advance of a bona fide determination. Presumably, Nicholas believes that the existing procedures are inadequate in his case because his request for a stay was denied. But this does not demonstrate why the procedures are constitutionally insufficient as an abstract question of law in every case. Moreover, it is not difficult to see how an automatic stay of removal for all T-visa applicants, without regard to the merits and particulars of each individual case, might burden the government.

In support of his due process argument, Nicholas relies primarily on *Fatty v. Nielsen*, No. C17-1535-MJP, 2018 WL 3491278 (W.D. Wash. July 20, 2018).[3] In *Fatty*, after finding it had subject-matter jurisdiction to consider the challenge, the court held that USCIS's determination that the petitioner's T-visa application was not bona fide was arbitrary and capricious and, therefore, violated the APA. *Id.* at *3. Though that determination made it unnecessary to go further, *see Wallace v. ConAgra Foods, Inc.*,

---

[3] Nicholas also relies on *S.N.C. v. Sessions*, No. 18 Civ. 7680 (LGS), 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018), but *S.N.C.* essentially followed *Fatty*. *See S.N.C.*, 2018 WL 6175902, at *6.

17

747 F.3d 1025, 1029 (8th Cir. 2014) (citing *Ashwander v. TVA*, 297 U.S. 288, 345–47 (1936) (Brandeis, J., concurring)), the court also held that the petitioner's removal before the adjudication of his T visa would violate due process because it would have deprived the petitioner of "a viable defense to removability." *Fatty*, 2018 WL 3491278, at *2. *Fatty* is not persuasive here. It relied on Ninth Circuit cases holding that § 1252(g) is to be interpreted narrowly and does not "'prevent the district court from exercising jurisdiction over . . . due process claims that . . . constitute general collateral challenges to unconstitutional practices and policies used by the agency.'" *Id.* at *1–2 (citing *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) and quoting *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1118 (9th Cir. 2001)). The Ninth Circuit's narrow approach to construing § 1252(g) seems at odds with the Eighth Circuit's approach to the statute. Consistent with this understanding, *Fatty* addressed an issue—the reasonableness of USCIS's determination that the petitioner's T-visa application was not bona fide—over which subject-matter jurisdiction is lacking under Eighth Circuit law. In view of that determination, *Fatty*'s resolution of the due process issue was unnecessary. *See Wallace*, 747 F.3d at 1029. *Fatty* recognized, citing 8 C.F.R. § 214.11(d)(1)(ii), that the petitioner "[did] not have a protected property interest in his T visa or its adjudication." *Fatty*, 2018 WL 3491278, at *2 n.2. But neither the regulation nor the procedures it establishes are addressed in *Fatty*'s due process assessment. *See id.* at *2–3. *Fatty* does not explain why, for example, the request for an administrative stay of removal under 8 C.F.R. § 241.6(a), made available in 8 C.F.R. § 214.11(d)(1)(ii), is insufficient. Nor is the availability of other procedures, such as a reasonable-fear determination under 8 C.F.R. § 208.31,

addressed. Apart from his reliance on *Fatty*, Nicholas advances no particular arguments showing that removal of a T-visa applicant before a bona fide determination has been made violates the Fifth Amendment's Due Process guarantee. He has not met his burden of showing that he is likely to prevail on the merits, and this means his motion for preliminary injunctive relief must be denied.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT** Petitioner Nicholas L.L.'s Emergency Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 2] is **DENIED**.


Dated: October 7, 2019         s/ Eric C. Tostrud
                               Eric C. Tostrud
                               United States District Court